UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JHARED EKRYSS, et al.,

                                    Plaintiffs,          DECISION AND ORDER

-vs-
                                                         15-CV-6742 CJS
IGNITE RESTAURANT GROUP, INC., et al.,

                                    Defendants.
_____


APPEARANCES

For Plaintiffs:              J. Nelson Thomas, Esq.
                             Jessica Lukiasiewicz, Esq.
                             Thomas & Solomon, LLP
                             693 East Avenue
                             Rochester, NY 14607
                             Tel: (585) 272-0540

For Defendants:              Justin Barnes, Esq.
                             Jackson Lewis, P.C.
                             1155 Peachtree Street, N.E.
                             Suite 1000
                             Atlanta, GA 30309
                             Tel: (404) 525-8200

INTRODUCTION

        This is a proposed collective/class action asserting claims under the Fair Labor

Standards Act ("FLSA") and the minimum-wage statutes of states including New York,

Missouri, Florida, Pennsylvania, Colorado, Michigan and Virginia.  Now before the Court

is Defendants' motion to dismiss the Complaint and compel arbitration. (Docket No.

[#87]).  The application is granted.

1

BACKGROUND

For purposes of the instant motion it is undisputed that Plaintiffs were all employed in tipped occupations by the Romano's Macaroni Grill ("Macaroni Grill") chain of restaurants, owned by Mac Acquisition, LLC.  At all relevant times Macaroni Grill had certain work rules that were set forth in a written document entitled "Employment Guidelines" ("the Guidelines").  In particular, Macaroni Grill had a 2011 version of the Guidelines, that was superseded by a 2013 version, and Plaintiffs were subject to one or both of these versions, depending upon when they were employed.  Both versions are 54 pages long, and have substantially similar content, covering topics such as the company's "substance abuse policy" and its "anti-harassment policy."  Both versions of the Guidelines further indicate that the parties' rights and responsibilities concerning the employment relationship will be "governed by the law of the State of Texas."[1]

The Guidelines emphasize that they do not establish a contractual relationship between the restaurant and its employees, with two exceptions.  Namely, the Guidelines purport to create a contract between the restaurant and its employees with regard to the "Dispute Resolution Program," which requires arbitration of almost every employment-related dispute and waives the ability of employees to either sue or arbitrate collectively,[2] and the "Confidentiality/Non-Compete/Non Solicitation

_____

[1]2011 version at p. 45, 2013 version at p. 45.

[2]Both the 2011 and 2013 versions contain identical provisions stating:

ANY CLAIM, CONTROVERSY OR OTHER DISPUTE RELATING TO YOUR EMPLOYMENT, SEPARATION FROM THE COMPANY, OR FOLLOWING SEPARATION FROM THE COMPANY, SHALL BE RESOLVED BY ARBITRATION, IN LIEU OF JURY TRIAL OR ANY OTHER LEGAL PROCEEDING, PURSUANT TO THE FEDERAL ARBITRATION ACT (TITLE 9, UNITED STATES CODE), AND IN

2

Agreement." On this point, the Employment Guidelines emphasize that they "aren't a contract (*with the specific exception of the Dispute Resolution Program and the Confidentiality/Non-Compete/Non-Solicitation Agreement*)." (emphasis added). In other words, Macaroni Grill drafted its Employment Guidelines in such a way that it inserted two purportedly binding agreements within a broader set of non-contractual work rules.[3]

To be clear, neither the Dispute Resolution Program nor the Confidentiality/Non-Compete/Non-Solicitation Agreement is a physically separate document, but rather, both are part of the Employment Guidelines manual. For example, in the 2013 version of the Employment Guidelines, the Dispute Resolution Program is set forth on pages 37-38 of the 54-page document, while the Confidentiality/Non-Compete/Non-Solicitation Agreement is set forth on pages 42-44.

Both the 2011 version and 2013 version of the Guidelines indicate that the Guidelines can be changed at will by Macaroni Grill. For example, the 2011 version states:

---

ACCORDANCE WITH THIS DISPUTE RESOLUTION PROGRAM. THE ARBITRATION WILL BE CONDUCTED BY A SINGLE ARBITRATOR WHO WILL BE SELECTED IN ACCORDANCE WITH THE APPLICABLE RULES OF THE AAA. THE ARBITRATION WILL BE ADMINISTERED BY THE AAA REGIONAL OFFICE CLOSEST TO YOUR WORKPLACE. IN THE EVENT THAT THE AAA DOES NOT ACCEPT ADMINISTRATION OF THE CLAIM, OR IS UNAVAILABLE, THE ARBITRATION PROCEEDING WILL BE ADMINISTERED BY ANOTHER NATIONALLY RECOGNIZED ARBITRATION SERVICES PROVIDER DESIGNATED BY MACARONI GRILL.

(emphasis in original). The Dispute Resolution Program provisions also contain nearly-identical provisions requiring that all covered claims must be arbitrated on an individual basis, and that no claims may be arbitrated on a class or collective basis.

[3]As discussed further below, employees would give their assent to the contractual provisions by signing an acknowledgment form.

3

> You also acknowledge that the Company reserves the right to revise, delete and/or add to the provisions of *the Guidelines*. To be effective, however, any such revisions, deletions or additions must be in writing and issued by an Officer of Macaroni Grill[.]

(2011 Guidelines at p. 1) (emphasis added). Similarly, the 2013 version states:

> You also acknowledge that the Company reserves the right to revise, delete and/or add to the provisions of *the Guidelines*. To be effective, however, any such revisions, deletions or additions must be in writing and issued by the CEO or Head of Human Resources at Romano's Macaroni Grill Restaurant Group.

(2013 Guidelines at p. 1) (emphasis added). Such language refers to "the Guidelines" generally, without excepting either the Dispute Resolution Program or the Confidentiality/Non-Compete/Non Solicitation Agreement.

The Dispute Resolution Program provision itself is silent regarding anyone's ability or inability to modify the arbitration agreement. Moreover, while the Dispute Resolution Program provision is labeled, at the top of each page, as being part of the Employment Guidelines, its text does not mention any other provision of the Employment Guidelines. On the other hand, other provisions of the Guidelines mention the Dispute Resolution Program several times. In particular, the Guidelines mention at least three times that the Dispute Resolution Program and Confidentiality/Non-Compete/Non-Solicitation Agreement  are "contracts," unlike the rest of the Guidelines, and in one instance the Guidelines summarize the provisions of the Dispute Resolution Program.[4]

---

[4]*See, e.g.*, 2013 version at pp. 1, 6 & 45.

4

The Guidelines include an Employment Guidelines Acknowledgment form ("the Acknowledgment Form"), which all employees were expected to sign.[5]  The Acknowledgment Form states, in pertinent part:

> I understand that, except where otherwise stated, the Team Member Employment Guidelines are not a contract and impose no legal obligation of any kind on Macaroni Grill.
>
> ***
>
> I understand that by accepting employment with Macaroni Grill, I agree that any claim, controversy or other dispute relating to my employment, separation from the company, or following separation from the company, shall be resolved by arbitration . . . in accordance with the provisions of the Macaroni Grill Dispute Resolution Program ("DRP"), which I have received and been given an opportunity to read.[6]

Immediately following the quoted language, the Acknowledgment Form briefly summarizes the main provisions of the Dispute Resolution Program.  For purposes of the instant application there is no dispute that Plaintiffs either signed this Acknowledgment Form or otherwise had notice of Macaroni Grill's arbitration policy.

On December 11, 2015, Plaintiffs commenced this action, asserting "tip credit" claims under the federal  Fair Labor Standards Act ("FLSA") and the minimum-wage statutes of New York, Missouri, Florida, Pennsylvania, Colorado, Michigan and Virginia. Plaintiffs are seeking to recover alleged unpaid wages from December 11, 2012, onward. [7]  On March 24, 2016, Defendants filed the subject motion to dismiss the

---

[5]Defendants cannot locate signed Acknowledgment Forms for all of the Plaintiffs.  However, for purposes of this application Plaintiffs do not dispute that they would be bound by the subject arbitration agreement if the Court finds that the agreement is enforceable.

[6]Acknowledgment Form, 2013 version, Guidelines at p. 45.

[7]See, e.g., Pl. Motion for Class Certification [#73-1] at p. 8 (Indicating that Plaintiffs are pursuing claims dating back three years prior to the filing of this action, which was on December 11, 2015).

Complaint and compel arbitration.  In support of the application, Defendants contend

that the Dispute Resolution Program constitutes a binding agreement between the

parties under Texas law, and that Plaintiffs' claims fall under the purview of the Dispute

Resolution Program, requiring that this action be dismissed.

In response to Defendants' application, Plaintiffs do not dispute that their claims

fall under the purview of the Dispute Resolution Program, or that  the Employment

Guidelines and Dispute Resolution Program are governed by Texas law.  However,

Plaintiffs maintain that Defendants' motion must be denied because under the law of

Texas, the Dispute Resolution Program is not binding agreement because it is "illusory,"

meaning that Macaroni Grill retained the right to amend the Guidelines and could

therefore avoid being bound by the arbitration provisions.  As discussed below, the

Court finds that the Dispute Resolution Program provision is not illusory under Texas

law and is enforceable.

DISCUSSION

Defendants have moved to dismiss the Complaint and compel arbitration,

pursuant to the Dispute Resolution Program section of the the Employment Guidelines,

which, they maintain, is a binding agreement.

> A party to a contract that requires arbitration may petition a district court
> 'for an order directing that such arbitration proceed in the manner
> provided for in such agreement.' 9 U.S.C. § 4.  A court must compel
> arbitration if it determines that a contractually valid arbitration agreement
> exists under the relevant state law and that the parties' dispute falls within
> the scope of that agreement.  When assessing the validity of an
> arbitration agreement, the general rule is that courts should apply ordinary
> state-law principles that govern the formation of contracts.

*Whitehaven S.F., LLC v. Spangler*, 633 F. App'x 544, 545–46 (2d Cir. Dec. 9, 2015) (citation and internal quotation marks omitted).  The parties here agree[8] that the Court must apply Texas law to determine whether Macaroni Grill's Employment Guidelines create an enforceable arbitration agreement.  Accordingly, the Court looks to the rulings of Texas' highest state civil court, the Texas Supreme Court, "[b]ecause federal courts must follow the holdings of the highest state court in applying state law." *Travelers Ins. Co. v. Henry*, 470 F.3d 56, 62 (2d Cir. 2006).  On the other hand, "[w]here the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to *predict* how the highest court of the forum state would resolve the uncertainty or ambiguity." *Travelers Ins. Co. v. 633 Third Associates*, 14 F.3d 114, 119 (2d Cir. 1994) (emphasis added; citation omitted).    In doing so, the Court must "give 'proper regard' to the relevant rulings of a state's lower courts." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013).  The Court is also mindful that Texas state courts are not bound by federal-court interpretations of Texas law. *See, e.g., Mirabilio v. Reg'l Sch. Dist. 16*, 761 F.3d 212, 218 (2d Cir. 2014) (Observing that if Circuit Court interpreted Connecticut state law, the Connecticut state courts would be "under no obligation whatever to follow our ruling.").

---

[8]Defendants contend that it is "unclear" whether this Court should apply New York law or Texas law "to the threshold question of whether the parties entered into an agreement to arbitrate," though they contend that "the answer is yes under the laws of both states." Def. Memo [#87-1] at p. 9.  Defendants further contend that once it has been determined that the parties "entered into an agreement to arbitrate," the Texas choice-of-law provision applies, and  "Texas law should govern the interpretation and enforceability of the DRP." *Id.*  Plaintiffs approach the issue somewhat differently, arguing that under New York's choice-of-law rules, it is clear that the Texas choice-of-law provision requires the Court to apply Texas law to the threshold question of "whether the contract itself is even valid." Pl. memo [#121] at p. 5.

Preliminarily, the Court must apply Texas law to determine which of the parties

bears the burden of proof with regard to the issue of contract formation. *See, Software*

*for Moving, Inc. v. La Rosa Del Monte Exp., Inc.*, No. 08 CIV. 986 (JGK), 2009 WL

1788054, at *7 (S.D.N.Y. June 23, 2009) (Where alleged licensing agreement was

governed by New York State law, district court applied New York State law to determine

which party had the burden of proving that a valid arbitration agreement existed), *aff'd*

*sub nom. Software for Moving, Inc. v. La Rosa Del Monte Express, Inc.*, 419 F. App'x

41 (2d Cir. 2011).   Under Texas law, the party seeking to compel arbitration has the

burden to prove that a valid arbitration agreement exists. *In re 24R, Inc.*, 324 S.W.3d

564, 566 (2010).  Accordingly, on this application Defendants have the burden to prove

that a valid arbitration agreement exists.[9]  Such showing must be made by a

preponderance of the evidence. *See, Progressive Cas. Ins. Co. v. C.A. Reaseguradora*

*Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993) (Holding that under the FAA,

which preempts state law on this point, "in determining whether the parties have agreed

to arbitrate, we apply the ordinary preponderance of the evidence standard.").

"[A]n employer attempting to enforce an arbitration agreement must show the

agreement meets all requisite contract elements." *J.M. Davidson, Inc. v. Webster*, 128

S.W.3d 223, 228 (Tex. Sup. Ct. 2003)).  Of course, in Texas and elsewhere,

consideration is "a fundamental element of every valid contract," and

---

[9]As discussed below the Court finds that Defendants have proven by a preponderance of evidence that there is an enforceable contract that is not illusory.   To the extent that a reviewing court might find that Defendants satisfied their initial burden merely by submitting the agreement and that it was Plaintiffs' burden to show that the contract was illusory, the Court would find that Plaintiffs failed to carry that burden, for the same reasons.

> [i]n the context of a bilateral arbitration agreement, consideration may consist of mutual promises to submit disputes to arbitration if the promises create a mutuality of obligation between the parties. However, when illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation and, thus, there is no contract. A promise is illusory when it fails to bind the promisor, who then retains the option of discontinuing performance.

*Ophthalmic Consultants of Texas, P.A. v. Morales*, No. 13-15-00278-CV, 2015 WL 6119490, at *2 (Tex. Ct. of Appeals Oct. 15, 2015) (citations and internal quotation marks omitted). "An arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether." *In re 24R, Inc.*, 324 S.W.3d at 567 (citations omitted); *see also, Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 505 (Tex. Sup. Ct. 2015) ("An arbitration agreement is illusory if it binds one party to arbitrate, while allowing the other to choose whether to arbitrate."), *reh'g denied* (Sept. 11, 2015).

In determining whether a valid arbitration agreement exists, Texas law requires the Court to "ascertain the intent of the parties as expressed in the instrument," by "examin[ing] the entire writing as a whole and giv[ing] effect to all its provisions." *D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862, 867 (Tex. Court of Appeals 2006).

Plaintiffs maintain that the alleged arbitration agreement (Dispute Resolution Program) is illusory because, as already mentioned, the Employment Guidelines indicate that Macaroni Grill "reserves the right to revise, delete and/or add to the provisions of the Guidelines." This provision places no temporal limitation on Macaroni Grill's ability to "revise, delete and/or add to" the Guidelines. Indeed, the only express limitations on Macaroni Grill in this regard are that any such revision, deletion and/or

addition must be in writing and issued by a particular corporate officer.  *Assuming arguendo* that such provision *applied* to the alleged arbitration agreement, the Texas Supreme Court would presumably find that the arbitration agreement is illusory, because there would be no express limitation on Macaroni Grill's ability to re-write the agreement.  By contrast, the Texas Supreme Court has held that an arbitration provision is not illusory if it places temporal and procedural restrictions on an employer's ability to "amend, modify, or terminate the Plan at any time":

> Here, . . . the agreement provided that "no such amendment or termination [by Odyssey] will alter the arbitration provisions incorporated into this booklet with respect to, or reduce the amount of any benefit payable to ... you under the Plan in connection with, an Injury occurring prior to the date of such amendment or termination," and that "any such amendment or termination of the arbitration provisions incorporated into this booklet shall not be effective until at least 14 days after written notice has been provided to you." *Thus, because of these limitations on Odyssey's right to amend or terminate the agreement, the arbitration agreement did not contain an illusory promise by Odyssey.*

*In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. Sup. Ct. 2010) (emphasis added).  Because the provision permitting Macaroni Grill to amend the Guidelines contains no such limitations, it would be illusory if applied to the alleged arbitration agreement (Dispute Resolution Program), since Macaroni Grill could essentially choose whether it wanted to arbitrate any employment dispute, even after a dispute has arisen between Macaroni Grill and an employee.

However, under Texas law an employee handbook provision permitting an employer to revise or delete portions of the handbook does not necessarily *apply* to an arbitration agreement contained in the employee handbook.  In *In re 24R, Inc.*, cited

earlier, the Texas Supreme Court evaluated whether an arbitration policy was illusory, where the employer used the arbitration policy in tandem with an employee manual which indicated that the employer could revoke, change or supplement its provisions "at any time without notice." *Id*., 324 S.W.3d at 567-568.  In holding that the arbitration policy was not illusory, the court relied upon the following factors:  1) the Employee Manual and the Arbitration Agreement  were "entirely separate document[s]"; 2) the Arbitration Agreement was a "stand-alone contract that . . . d[id] not incorporate the employee [manual]"; and 3) the Arbitration Agreement "ma[de] no mention of the right to change its terms," but instead, indicated that the agreement to arbitrate "continue[d] beyond, and [was] not affected by, a termination of employment." *Id*.  In sum, the Court's ruling relied heavily on two factors -- the arbitration provision was a separate agreement, and the arbitration provision neither incorporated the employee manual by reference or otherwise permitted the employer to abolish the provision.

The Court is not aware of any decision by the Texas Supreme Court involving the precise situation presented here, where an arbitration agreement within an employee handbook is being challenged as "illusory."  However, there are a number of decisions by Texas's intermediate appellate court, the Texas Court of Appeals, addressing cases with facts that are more analogous to those of the instant case.  Five such decisions are particularly instructive: *In re C&H News Co.*, 133 S.W.3d 642 (2003) ("*C&H News*"), *Sun Fab Indus. Contracting, Inc. v. Lujan*, 361 S.W.3d 147 (2011) ("*Sun Fab*"),  *Flex Enter. LP v. Cisneros*, 442 S.W.3d 725 (2014) ("Flex"), *Young Mens Christian Association of Greater El Paso, Texas v. Garcia*, 361 S.W.3d 123 (2011)

11

("*YMCA*") and *D.R. Horton, Inc. v. Brooks* ("*D.R. Horton*"), cited earlier.

In *C&H News*, the court found that an arbitration agreement was illusory, because it expressly incorporated by reference an employee handbook which the employer could modify at any time without notice to the employee.   The court stated:

> We are unable to disregard the material terms included in the handbook, which have been incorporated, by reference, into the arbitration agreement. Reading the agreement and handbook together, we hold that the purported arbitration agreement allows relator to unilaterally amend the terms of the handbook, and in so doing, allows relator to unilaterally amend the types of claims subject to arbitration. Thus, relator retains the ability to pick and choose the claims its wants to arbitrate.

*Id*., 133 S.W.3d at 647.

However, in *Sun Fab*, the Texas Court of Appeals found, purportedly relying upon the Texas Supreme Court's ruling in *In re 24R*, that an arbitration agreement was not illusory, even though it was contained within an employee handbook whose policies the employer could modify or abolish "at any time" without advance notice.  In doing so, the court in *Sun Fab* found that the arbitration agreement was a separate agreement that did not incorporate by reference the employee handbook or otherwise provide for the employer to unilaterally modify the arbitration provision. *Sun Fab*, 361 S.W.3d at 150-151.  The court emphasized that the arbitration provision was by it terms a binding agreement, while the employee handbook policies were not, and that the arbitration provision did not incorporate the employee handbook provisions, even though it mentioned the employee handbook:

> [A]lthough the term 'employee handbook' is present within the arbitration agreement, we do not find that language . . . to be an incorporation of the handbook within the arbitration agreement or of the agreement within the

12

> handbook.  . . . We [also] do not find the listing of the arbitration
> agreement within the employee handbook's table of contents, the
> inclusion of the heading, 'Agreement to Arbitrate Claims' therein, nor the
> fact that the both the handbook and Agreement to Arbitrate Claims were
> signed on the same day to constitute an incorporation  of the arbitration
> agreement within Sun Fab's employee handbook.  Rather, we find the
> arbitration agreement to be a contract that exists independently of the
> employee handbook.

*Id*., 361 S.W.3d at 152.

By contrast, in *Flex*, the Texas Court of Appeals held that an arbitration agreement was illusory, where it was contained within an employee manual, which could be modified, revoked or suspended by the employer "at any time, with or without notice," and the arbitration agreement incorporated the employee manual. *Id*., 442 S.W.3d at 729.  That is, the Court found that the arbitration provision in *Flex* was not a stand-alone agreement, but that the arbitration provision was subject to, and incorporated into, the employee manual, and could therefore be modified by the employer at any time without prior notice.      In *YMCA*, the Texas Court of Appeals held that an arbitration provision was illusory, where it was contained within an employee manual which both indicated that it could be unilaterally retracted, revoked or changed by the employer "at any time," and repeatedly stated that it created no employment contract.  Interestingly, the court made that determination even though the arbitration provision, when viewed in isolation, indicated that it was a binding agreement. *Id.*, 361 S.W.3d at 126.  On this point, the court stated:

> When the dispute resolution policy is examined as if it were a separate,
> stand-alone document, it satisfies the elements of a contract and reflects
> that the YMCA and any employee who accepted employment or

> continued to work after October 1, 2003 agreed to arbitrate
> employment-related disputes under the FAA. But the dispute resolution
> policy is not a separate document and it does not merely reaffirm Garcia's
> status as an at-will employee. It is one of numerous policies found in a
> personnel policy manual which required employees to acknowledge that
> the manual is a "general suggestive guideline only" and does not create
> an employment contract. The manual pointedly states that "this manual is
> not intended to create *any* contractual rights in favor of the employee or
> the [YMCA]." Significantly, it does not except the dispute resolution policy
> from the reach of the disclaimers.

*Id.*, 361 S.W.3d at 127 (emphasis added). Thus, the court found that the disclaimers in the employee manual, indicating that the manual was not creating any contract rights, trumped the language in the arbitration provision purporting to create a binding agreement. *Id.* ("In light of the disclaimers found in the personnel policy manual, we conclude that the dispute resolution policy is not a valid arbitration agreement.").

Finally, in *D.R. Horton*, the Texas Court of Appeals found that an arbitration agreement was not illusory, where the arbitration agreement was contained in an "acknowledgment form," acknowledging the employee's receipt of an employment handbook. The handbook indicated that it did not create any contract and could be superseded, modified or eliminated by the employer. Nevertheless, the court found that such language expressly referred only to the employee handbook and not to the acknowledgment form, which contained a separate arbitration agreement. The court also observed that the acknowledgment form itself gave the employer no ability to amend or rescind the arbitration agreement. *Id.*, 207 S.W.3d at 868. The court further found that while the acknowledgment form referred to the employee handbook, the arbitration clause *within* the acknowledgment form indicated, by its "tone and

14

perspective," that it was creating "a separate agreement with a distinct purpose."  In

particular, the court stated:

> The arbitration clause is further distinguished from the remaining
> [acknowledgment form] provisions in both its tone and perspective. It
> contains promises by both D.R. Horton and Brooks to submit their claims
> to arbitration, stating: "In the event there is any dispute arising out of your
> employment ... which the parties are unable to resolve[,] ... you and D.R.
> Horton, Inc. agree to submit all such disputes ... to final and binding
> arbitration." However, the remaining [acknowledgment form] provisions,
> narrated from the employee's perspective, are affirmations of the
> employee's understanding of the Handbook's terms and policies and refer
> to his or her responsibilities therein. Thus, when the [acknowledgment
> form] provisions are read as a whole, the tone of the arbitration clause
> itself evidences an intent that it is a separate agreement with a distinct
> purpose.

*Id.*, 207 S.W.3d at 868-869 (footnote omitted).

Applying these principles to the facts of the instant case, the Court concludes

that under Texas law, and especially the *Sun Fab* decision which is most factually

similar to the instant case, Macaroni Grill's Dispute Resolution Program provision is a

distinct, enforceable arbitration agreement, even though it is nominally part of the

Employment Guidelines booklet.  On this point, the Employment Guidelines repeatedly

indicate that the Dispute Resolution Program is a binding contract, while the Guidelines

otherwise are not contractual.  Additionally, the Dispute Resolution Program is a self-

contained provision insofar as it exhaustively sets forth the rules and procedures for the

arbitration program, without referencing or incorporating any other part of the

Employment Guidelines.[10]  As further evidence of its distinct nature, the Dispute

---

[10]*See, e.g.*, 2011 version at p. 37.

Resolution Program refers to itself as "THIS DISPUTE RESOLUTION PROGRAM AND AGREEMENT," and contains its own choice-of-law provision and savings clause.  And finally, there is no language in the Dispute Resolution Program itself permitting Macaroni Grill to amend or alter the provision.  Viewing the Employment Guidelines "as a whole and giving effect to all [their] provisions," it is evident that, as in the *Sun Fab* case, the Dispute Resolution Program is "a contract that exists independently of the employee handbook," and that Macaroni Grill did not reserve the right to amend or abolish the arbitration agreement, retroactively or otherwise.  Consequently, the Dispute Resolution Program is not illusory, and constitutes an enforceable arbitration agreement.

Plaintiffs maintain that the subject arbitration agreements are unenforceable, in pertinent part because Texas law "bars the use of contracts that can be unilaterally modified," and because

> [t]his rule applies no matter where the modification terms are contained. In employment cases, the terms are often set forth in the employee handbook where the arbitration agreements are also contained, and those provisions doom any agreement to arbitrate.

Pl. Memo of Law [#121] at p. 14.  However, that is an incorrect statement of Texas law, as already discussed.  Moreover, the cases upon which Plaintiffs primarily rely, such as *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202 (5th Cir. 2012) and *Scudiero v. Radio One of Texas II, LLC*, 547 Fed.Appx. 429 (5th Cir. Oct. 24, 2013), are factually inapposite.[11]

---

[11]Both *Carey* and *Scudiero* involved facts similar to those presented in *Flex* and *YMCA*, because the arbitration provisions at issue were contained within employee handbooks which indicated that all of their policies were subject to change, without excepting the arbitration provisions.  The courts in *Carey* and

As a final matter, just prior to oral argument of this matter Plaintiffs sent the Court a letter application, asking the Court to take judicial notice of pleadings in another action in which Defendants are being sued by employees.  Such pleadings include Macaroni Grill's 2008 employment handbook and employee arbitration agreement.  In particular, the 2008 guidelines' acknowledgment form includes the following statement: "If Mac[aroni Grill] amends or terminates the Agreement to Arbitrate, the amendment or termination shall not be effective until 10 days after reasonable notice of the amendment or termination is given to Team Member and such amendment or termination will not impact disputes that arose prior to the date of the amendment or termination."  The 2011 and 2013 Employment Guidelines contain no such statement, which, Plaintiffs contend, "demonstrates that the defendants intentionally changed their current arbitration agreement to be retroactively modifiable at will."[12]  Plaintiffs maintain that the Court should consider the 2008 version because the 2011 and 2013 versions are ambiguous.  Plaintiffs further allege that Defendants' counsel intentionally "hid" the 2008 version from the Court, by not submitting it in connection with the instant motion. Defendants respond that Plaintiffs' submission is procedurally improper, and that the 2008 handbook is irrelevant in any event, since Plaintiffs claim arose in 2012.

Plaintiffs' application is denied for several reasons.  First, the application, which the Court views as a sur-reply, fails to comply with Rule 7(a)(6) because Plaintiffs' counsel submitted it without the Court's permission.  Moreover, it is unlikely that the

---

*Scudiero* found that the arbitration provisions did not constitute separate agreements, and were therefore subject to the terms of the handbook.  The facts of *Carey* and *Scudiero* are therefore distinguishable from those presented in *Sun Fab* and in the instant case.

[12]Letter of J. Nelson Thomas dated August 5, 2016.

Court would have granted such an application under Rule 7(a)(6), since Plaintiffs offer no reason why they could not have included the same materials and arguments in their responsive papers.[13]   Furthermore, the Court agrees with Defendants that the submission is irrelevant, since the 2008 version of the Macaroni Grill employee handbook was not in effect when Plaintiffs' claims in this action arose and the  subject 2011 and 2013 versions are not ambiguous.   Notably in that regard, although Plaintiffs now contend that the Court should consider the 2008 version because the 2011 and 2013 versions are ambiguous, they never argued in their original response submission [#121]  that the 2011 and 2013 versions are ambiguous.   To the contrary, Plaintiffs previously represented to the Court that "[t]here is no dispute regarding the relevant provisions of Defendants' Arbitration Agreements."[14]   Finally, the factual premise for Plaintiffs' application, *i.e.*, that  the amendment provision in the Employment Guidelines necessarily applies to the Dispute Resolution Program, is mistaken for the reasons already discussed.[15]   Consequently, Plaintiffs' contention that Defendants improperly "hid" the 2008 documents from the Court is baseless.

---

[13]The documents were filed in the other lawsuits in 2014.

[14]Pl. Memo of Law [#121] at p. 2.

[15]The Court also does not agree with Plaintiffs' contention that the 2008 version was more favorable to employees than the 2011 version and 2013 version.  To the contrary, under the Court's analysis herein, the 2011 and 2013 versions do not give Macaroni Grill *any* ability to amend or delete the arbitration provision, unlike the 2008 version which gave Macaroni Grill some ability to modify the arbitration provision.

CONCLUSION

Defendants' motion to dismiss the Complaint and compel individual arbitration

(Docket No. [#87]) is granted.  The Clerk of the Court is directed to close this action.

SO ORDERED.

Dated:        Rochester, New York
              September 7, 2016

              ENTER:

                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge